UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN W. BRENNAN, Plaintiff, | ) ) ) ) | |
| v. | ) ) | Civil Action No. 17-12475-LTS |
| 42 TECHNOLOGY LTD, et al., Defendants. | ) ) ) ) | |

ORDER ON MOTION TO DISMISS

April 17, 2018

SOROKIN, J.

I.  INTRODUCTION

On November 20, 2017, Plaintiff John W. Brennan brought suit against 42 Technology Ltd. ("42 T"), an engineering consultancy, and two of its employees, Jon Spratley and Adrian Swinburne ("the Employee Defendants"),[1] in Massachusetts state court, alleging defamation, tortious interference with advantageous relations, and tortious interference with employment relationship, all arising out of Brennan's termination from Arthur D. Little, ("ADL") following 42 T's issuance of a report ("the Report") and appendix ("the Appendix") concerning the status and economic viability of a project managed by Brennan. Doc. Nos. 1-1. On December 15, 2017, the Defendants removed the action to this Court, Doc. No. 1, and, on December 19, 2017, they filed a motion to dismiss for lack of personal jurisdiction, Doc. No. 6. Brennan has opposed. Doc. No. 16.

---

[1] Collectively, 42 T and the Employee Defendants are hereinafter referred to as "the Defendants."

1

II. BACKGROUND

Brennan, a Massachusetts resident, was formerly the President and Managing Director of Arthur D. Little, Inc., ("ADL US"), a Massachusetts based company. Doc. No. 1-1 at ¶ 15. ADL US is an affiliate of Arthur D. Little, Ltd. (ADL UK), which is based in England. Doc. No. 9 at ¶ 4; Doc. No. 8 at ¶ 4; Doc. No. 17-6 at ¶ 14. The global business of Arthur D. Little is organized in an entity known as, Arthur D. Little Partnership SCRL ("ADL Global"), a cooperative limited company incorporated in Belgium that operates worldwide through separate, local companies, such as ADL UK and ADL US. Doc. No. 17-6 at ¶¶ 14-15. In the fall of 2015, Brennan originated and signed a contract opportunity ("the Client Project") on behalf of ADL US. Id. at ¶ 22. In November 2016, ADL UK retained Defendant 42 T, allegedly,[2] to audit the Client Project. Doc. No. 8 at ¶ 15.

Defendant 42 T is based in England and is organized under the laws of England and Wales; the Employee Defendants work in England and are citizens and residents of England. Doc. No. 8 at ¶¶ 3-14. The solicitation of 42 T services was communicated to Employee Defendant Spratley by Nick White, a managing partner with ADL UK who lives and works in London, and who is also on the board of directors of ADL Global, serving as the chair of its audit and risk committee. Id. at ¶ 16; Doc. No. 17-6 at ¶ 16.

Over the course of 42 T's audit of the Client Project, Employee Defendants traveled to Boston, Massachusetts for one day, reviewed documents, and met with and interviewed Brennan, as well as others. Doc. No. 1-1 at ¶ 6; Doc. No. 8 at ¶ 29-20. After returning from their trip, the

---

[2] Brennan claims that 42 T's work was, although labeled an audit, in fact a bogus report intended to "discredit Brennan" and "provide cover for ADL's wrongful demotion and termination of Brennan[.]" Doc. No. 1-1 at ¶ 40.

Defendants requested that Brennan send additional documents, all generated in Massachusetts, which Brennan sent. Doc. No. 17-6 at ¶ 25.

After the completion of the audit, on February 17, 2017, 42 T issued the Report and Appendix discussing the Client Project and Brennan, which they submitted to the senior management of ADL UK. Id. at ¶¶ 47-48, 56. Brennan alleges, "on information and belief,"[3] that ADL UK senior management then "published the Report and Appendix, or some portions thereof, to [Brennan's client]" and that 42 T was aware that senior management would do so. Id. at ¶ 57. Following the issuance of the Report and Appendix, on May 3 2017, Brennan was removed from his position as President of ADL US and, in August 2017, he was terminated from employment. Id. at ¶¶ 61-62.

III. DISCUSSION

"To hear a case, a court must have personal jurisdiction over the parties, that is, the power to require the parties to obey its decrees." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). Brennan bears the burden of establishing that the Court has personal jurisdiction over the Defendants. Id. To establish personal jurisdiction, Brennan "must meet the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment." Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015); accord Neelon v. Krueger, No. 12-CV-11198-IT, 2016 WL 3390686, at *2 (D. Mass. June 17, 2016), appeal dismissed, No. 16-1955, 2016 WL 9632300 (1st Cir. Nov. 18, 2016).

---

[3] "Upon information and belief" means "based on secondhand information that [the asserting party] believes to be true." Menard v. CSX Transp., Inc., 698 F.3d 40, 44 n.5 (1st Cir. 2012) (quoting Black's Law Dictionary 783 (7th ed. 1999)).

In determining whether Brennan has met his burden at this stage, the Court applies the *prima facie* standard, taking "the specific facts affirmatively alleged by the plaintiff as true[.]" Neelon v. Krueger, No. CIV.A. 12-11198-FDS, 2013 WL 2384318, at *4 (D. Mass. May 29, 2013). In addition, "[t]he court can 'add to the mix [any] facts put forward by the defendants, to the extent that they are uncontradicted.'" Id. (quoting Daynard, 290 F.3d at 51).

A.   Personal Jurisdiction under the Massachusetts Long Arm Statute

Brennan has met his burden of satisfying the requirements of the Massachusetts Long Arm Statute. The statute provides, *inter alia*, that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting business in [Massachusetts.]" Mass. Gen. Laws ch. 223A, § 3(a). The Defendants, by traveling to Massachusetts and gathering information there to generate the Report and Appendix, plainly transacted business in Massachusetts. The Defendants do not dispute this. See Doc. No. 7 at 8-9.[4] Instead, Defendants argue that Brennan has failed to allege that his claims "arise[] from" the Defendants' transaction of business in Massachusetts. See id.

"A claim 'arises from' a transaction of business [in Massachusetts] when it would not have arisen 'but for' the transaction of business in [Massachusetts]." Pettengill v. Curtis, 584 F. Supp. 2d 348, 356 (D. Mass. 2008). The "but for" test is satisfied when the transaction of business in Massachusetts was a "step in the train of events that result[ed] in the [alleged] injury" or when it "brought the parties within tortious striking distance of each other." Tatro v. Manor Care, Inc., 416 Mass. 763, 770–71 (1994) (citations omitted). Here, the Defendants' interview with and collection of documents from Brennan (i.e. their transaction of business in

---

[4] The "transacting business" clause is not "an especially rigorous" requirement. Baskin–Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). "An isolated transaction" may suffice. Nova Biomedical Corp. v. Moller, 629 F.2d 190, 194 (1st Cir. 1980).

4

Massachusetts) was a material step in the Defendants' development of the Report and Appendix, which form the basis for all three of Brennan's claims. Brennan has therefore met his burden of alleging that his claims arise from the Defendant's transaction of business in Massachusetts.

B.  Personal Jurisdiction under the Due Process Clause

Brennan has also met his burden of establishing specific jurisdiction.[5] For the purposes of specific jurisdiction, "the Constitution requires that a defendant have maintained 'minimum contacts' with the forum, 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Neelon v. Krueger, No. 12-CV-11198-IT, 2016 WL 3390686, at *2 (D. Mass. June 17, 2016), appeal dismissed, No. 16-1955, 2016 WL 9632300 (1st Cir. Nov. 18, 2016) (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945)). "Minimum contacts" exists when: (1) the cause of action "arise[s] out of or relate[s] to" the defendant's in-forum conduct; (2) the defendant "purposefully avails itself of the privilege of conducting activities within the forum," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 475 (1985); and (3) the defendant's conduct is such that it is "reasonable . . . to require the [defendant] to defend" the suit in the forum, World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (quotations omitted).[6]

---

[5] "Consistent with the demands of due process, a federal district court may exercise either general or specific jurisdiction over a defendant." Baskin–Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016). Brennan has not proffered a claim of general jurisdiction. See Doc. No. 16.

[6] When evaluating jurisdiction over a defendant in a claim of an intentional tort, the Supreme Court directs examining the relationship among the defendant, the forum, and the litigation. Walden v. Fiore, 134 S. Ct. 1115, 1118 (2014) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984). Here, the Defendants came to Massachusetts to interview a Massachusetts resident to evaluate a contract originated in Massachusetts by a Massachusetts company; they relied on (or, as alleged by the Brennan, intentionally mischaracterized) information gathered in Massachusetts for the Report and Appendix; the Report and Appendix allegedly caused reputational harm to the Brennan in Massachusetts. Cf. Walden, 134 S. Ct. at

5

The first prong of specific jurisdiction, "relatedness," "serves the important function of focusing the Court's attention on the nexus between [the] plaintiff's claim and the defendant's contacts with the forum." Cossart v. United Excel Corp., 804 F.3d 13, 20 (1st Cir. 2015). The relatedness test is a "flexible, relaxed standard," Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir.1994), which requires "a showing of material connection." Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005).

In this case, Brennan's claims are materially connected to the Defendants in-forum conduct because the claims concern the Report and Appendix, the basis of which was gathered, in part, in Massachusetts and was analyzing conduct that transpired in Massachusetts. This connection is more than "attenuated;" Brennan has alleged the Defendants defamed him in the Report and Appendix by mischaracterizing or ignoring information made available to them either in Massachusetts or subsequently via documents generated in Massachusetts. Doc. No. 1-1 at ¶¶ 50, 52, 58. See Phillips v. Prairie Eye Center, 530 F.3d 22 (1st Cir. 2008) (quotations omitted) ("There must be more than just an attenuated connection between the contacts and the claim; the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case."). Furthermore, the effects of the alleged harm in this case were suffered in Massachusetts.[7] Cf. Calder v. Jones, 465 U.S. 783, 789 (1984) (finding jurisdiction "proper in California based on the "effects" of [Defendants'] Florida conduct in California.").

---

1123 (describing Calder v. Jones, 465 U.S. 783 (1984) ("[D]efendants relied on phone calls to 'California sources' for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California . . . In sum, California was the focal point both of the story and of the harm suffered.").

[7] In-forum effects are one component of the relatedness inquiry but, on their own, they are "insufficient . . . to show relatedness." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001); see Noonan v. Winston Co., 135 F.3d 85, 90 (1st Cir. 1998) (finding no personal jurisdiction even though effects of alleged defamatory photographs were felt in Massachusetts

Finally, contrary to the Defendants' assertions, for the relatedness prong to be satisfied, it is not essential that the alleged tort occurred in Massachusetts. See Pike v. Clinton Fishpacking, Inc., 143 F. Supp. 2d 162, 169 (D. Mass. 2001) (finding the relatedness prong satisfied when the defendants recruited the plaintiff in Massachusetts although the alleged tort occurred in Alaska). Instead, what is required is that the in-forum contacts are causally connected to the alleged harm. See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 207 (1st Cir. 1994) (explaining that the relatedness inquiry is intended in part to ensure "causation remains in the forefront of the due process investigation."). In Ticketmaster, the court found relatedness lacking because the defendant, a Massachusetts journalist's one-time, by phone, source, did not have "by any stretch of the most active imagination" any control over the "form and tone" of the article published in Massachusetts, i.e. the cause of the plaintiff's injury. Id. By contrast, here, the Defendants came to Massachusetts to gather information for the Report and Appendix, i.e. the alleged cause of Brennan's injury. And, although the Defendants did not publish the alleged defamatory statements in Massachusetts (but rather in England), the Defendants controlled the contents, form, and tone of the statements published in Massachusetts, i.e. the cause of Brennan's alleged injury, because they wrote them. In addition, at least for jurisdictional purposes, on the present

---

when the photographs were published in France with French text and the defendants were unaware that the published material would ever reach Massachusetts). "[E]ffects-based jurisdiction is unreasonable . . . where the defendant has not intentionally reached out to the forum state in some way[.]" United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 629 (1st Cir. 2001). As the Supreme Court explained in Calder, a California court would be powerless to exercise jurisdiction over a hypothetical welder who worked on a boiler in Florida that later exploded in California merely because he worked on the exploding boiler. Calder, 465 U.S. at 789. The Supreme Court contrasted the hypothetical welder with the Calder case in which the defendant wrote a story about the "California activities of a California resident" whose "career was centered in California." Id. At 788-89. Likewise, here, the Report and Appendix were about the Massachusetts activities of a Massachusetts resident whose career was centered in Massachusetts.

record, the Court draws the reasonable inference that the defendants knew and understood the Report and Appendix were aimed at Massachusetts, particularly Brennan's past and future conduct in Massachusetts. The relatedness inquiry is therefore satisfied.

The second prong of specific jurisdiction, "purposeful availment," is "satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623-24. "[T]he cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability." Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995). Here, the Defendants voluntarily traveled to Massachusetts to interview Massachusetts residents and to collect documents created in Massachusetts for the purpose of auditing the project of a Massachusetts based company which project was then supervised by a Massachusetts employee with at least some of the work on the project occurring in Massachusetts. Under the circumstances, it was foreseeable to them that they would be subject to this Court's jurisdiction for claims related to the Report and Appendix arising out of this work based on their Massachusetts contacts. The purposeful availment prong is therefore satisfied.

Finally, the third prong of specific jurisdiction, "reasonableness," is "based on 'gesalt factors' that bear upon the overall fairness of subjecting nonresidents to this court's jurisdiction." Neelon, No. 12-CV-11198-IT, 2016 WL 3390686, at *4. The gestalt factors are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Burger King Corp., 471 U.S. at

477. These factors are neutral or weigh in Brennan's favor. First, the Defendants have claimed no "special or unusual burden in defending this case." <u>Neelon</u>, No. 12-CV-11198-IT, 2016 WL 3390686, at *4; see <u>C.W. Downer & Co. v. Bioriginal Food & Science Corp.</u>, 771 F.3d 59, 69 (1st Cir. 2014) (finding that for the burden of international travel to "affect the analysis, the defendant must show that is special or unusual"). Second, Massachusetts has an interest in the adjudication of claims alleging tortious injury within its borders, and Brennan has a clear interest in litigating his claims in his choice of forum, see <u>Pritzjer v. Yari</u>, 42 F.3d 53, 64 (1st Cir. 1994) (according "plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience"). Finally, the Defendants assert no interests or inefficiencies that "cut strongly . . . against jurisdiction." See <u>C.W. Downer</u>, 771 F.3d at 69 (1st Cir. 2014). In fact, the Defendants have made no argument as to reasonableness of this forum. See Doc. No. 7. Accordingly, the gestalt factors weigh in favor of jurisdiction.

IV. <u>CONCLUSION</u>

For the forgoing reasons, the Motion to Dismiss (Doc. No. 6) is DENIED. Defendants' response to the Complaint is due in fourteen days.

SO ORDERED.

  /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

9